

IN THE UNDTED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
12/17/2013

| | | |
|---|---|---|
| IN RE: <br> SOUTHWEST RANCHING, INC. <br> DEBTOR | § <br> § <br> § <br> § | CASE NO. 01-23337-C-11 <br><br> CHAPTER 11 |
| HOSKINS, INC. <br>     PLAINTIFF <br><br> VS. <br><br> SOUTHWEST RANCHING, INC. <br> And LEE ROY HOSKINS <br>     DEFENDANTS | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | ADV. PRO. NO. 01-2121-C |
| LEE ROY HOSKINS <br>     PLAINTIFF <br><br> VS. <br><br> HAZEL HOSKINS <br> And CLIFF HOSKINS <br>     DEFENDANTS <br><br> VS. <br><br> SOUTHWEST RANCHING, INC. <br>     INTERVENOR | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | ADV. PRO. NO. 01-2120-C |

**MEMORANDUM OPINION AND ORDER ON EMERGENCY MOTION TO ENFORCE
<u>PERMANENT INJUNCTION (Docket #63)</u>**

Before the Court is the Emergency Motion to Enforce Permanent Injunction (the "Motion to Enforce") filed by Hazel Hoskins ("Hazel"). The Court, having heard the evidence and arguments of counsel, finds as follows.

### BACKGROUND

For almost twenty years, the actions of Hazel relating to the disposition of her husband's estate have been the subject of lawsuits by her sons. In 2002, it seemed that the family had finally achieved a resolution of their many disagreements, evidenced by the global Settlement

1

Agreement, Mutual Release, Settlement Motion and Settlement Order (each as described below and collectively referred to as the "Settlement Documents"). Those agreements and order of this Court bound Hazel, her sons, their wives, and their children (including minor children and after-born children) and enjoined them from filing suit against her related to her deceased husband's estate. All of the documents remain in full force and effect and are not terminated by operation of law or the passage of time.

Prior to the Settlement Agreement, Hazel was accused by her son, Lee Roy Hoskins (hereinafter, "Lee Roy"), of failing to fulfill the instructions of her husband's will and breaching her fiduciary duties to other beneficiaries under the will. Eventually, those disputes were implicated in the bankruptcy proceedings of Southwest Ranching, Inc., a family business.

In 2001, Lee Roy filed Adversary No. 01-2120-C in this Court, naming as a defendant his mother Hazel and his brother Colonel Clifton Hoskins ("Cliff"), alleging that they committed various acts which warranted removal of Hazel as Independent Executrix and Trustee of the Residuary and Martial Deduction Trusts, which were established pursuant to her husband's will ("Adversary No. 2120").

Adversary No. 2120 and related State Court litigation were eventually resolved by the Settlement Agreement approved by this Court in 2002. The parties to the Settlement Agreement include Lee Roy, Leonard Hoskins ("Leonard"), Cliff, and Hazel (individually and as Independent Executrix of the Estate of Lee Roy Hoskins, Sr., and as Trustee of the Lee Roy Hoskins, Sr. Residuary Trust, and as Trustee of the Lee Roy Hoskins, Sr. Marital Deduction Trust). William Rex Hoskins ("Rex"), a son of Leonard and grandson of Hazel, also signed the acknowledgement page of the Settlement Agreement.

In conjunction with the Settlement Agreement, the parties thereto and other individuals and entities interested in the subject matter of Adversary No. 2120 and the related State Court

2

litigation executed a Mutual Release and Indemnity Agreement (the "Mutual Release"). All of the people mentioned above, including Rex, signed the acknowledgement page of the Mutual Release, along with other designated beneficiaries of the testamentary trusts. By its express terms, the Mutual Release incorporated by reference all the terms of the Settlement Agreement.

On or about June 3, 2002, Southwest Ranching, Inc. filed is Motion for Authority to Compromise Controversy and Application for Permanent Injunction [Dkt. 75] (the "Settlement Motion") in the main bankruptcy case. In the Settlement Motion, Hazel and the other parties to the adversary proceedings were identified as "Actual Parties." Individuals whose interests were implicated by the adversary proceedings, but who were not parties thereto, were defined as "Settling Parties." The Settling Parties included the children of Leonard, including Rex. Together, the Settling Parties and the Actual Parties constitute the "Parties" for purposes of the Settlement Motion and Settlement Order.

On July 1, 2002, this Court entered its Order Authorizing Compromise of Controversy Between Southwest Ranching, Inc., Hoskins, Inc., Hazel Hoskins, Lee Roy Hoskins, Jr., Colonel Clifton Hoskins and Others (dkt. #78) (the "Settlement Order"), which identified the "children of … Leonard K. Hoskins" (including Rex) as "Parties" to the Settlement Agreement. The Settlement Order recites that all of the Parties – which, as defined therein, includes Rex – "have either been actual parties to this litigation or have submitted to the jurisdiction of this court within the context of approval of the Settlement Agreement …" The Settlement Order was not appealed and is final. See *In re Bradshaw, 283 B.R. 814, 817* (B.A.P. 1st Cir. 2002) ("if not taken or preserved within the 10 day appeal period, an appeal from a final order of a bankruptcy court will fail." (Citation omitted.))

3

Based on the terms of the Settlement Agreement and the presentations of the parties, this Court found "that the Parties have requested and agreed to in the Motion" and therefore the Court ordered a Permanent Injunction prohibiting the instigation of or continuation of any litigation by the Parties against any other Party by a Judgment entered October 18, 2002 (dkt. #48).

In 2008, despite having signed the Settlement Agreement and Mutual Releases, Leonard filed suit against Hazel and others in the County Court of Live Oak County, raising allegations covered by the Settlement Agreement. When reminded of the Settlement Agreement, Mutual Release and Permanent Injunction, Leonard filed a Notice of Non-Suit in that matter. Leonard then sought approval from this Court to proceed in State Court through a Motion for Relief from Injunction to Commence State Court Litigation filed in Adversary No. 2120 [Dkt. #120]. The Court denied that Motion and ordered the parties to arbitration. That arbitration is currently pending.

On or about October 8, 2013, Rex filed a new State Court proceeding styled "Application to Remove Independent Executrix and Testamentary Trustee and Motion to Appoint Statutory Probate Judge" (the "Application to Remove") in the County Court of Live Oak County, Texas, where it was docketed in Cause No. 1785. Hazel argues that Rex is enjoined and prohibited from filing the Application to Remove in State Court. Hazel believes that the Permanent Injunction contained in the Settlement Order is binding and in effect against Rex, while Rex disagrees and asserts that this Court did not have personal jurisdiction over Rex because he was not a party to Southwestern Ranching, Inc.'s bankruptcy or the related adversary proceedings.

Hazel filed her Motion to Enforce requesting that this Court determine that the Permanent Injunction applies to Rex.

## DISCUSSION

This Court has jurisdiction to enforce its own orders. *Travelers Indemnity Co. v. Bailey*, 557 US 137, 151 (2009).

There is no question, nor has anyone argued that Rex is bound by the Settlement Agreement and the Mutual Release and Indemnity Agreement. Rex signed, approved and accepted both documents and is thus bound by them.

Rex argues that he is not bound by the Settlement Order because the Court did not have personal jurisdiction over him. However, he is a "Party" as defined in the Settlement Order, which contains a permanent injunction that unequivocally prohibits him from filing the Application to Remove without prior leave from this Court. Moreover, the Settlement Order expressly states that all of the Parties to the Settlement Motion (including Rex) were either parties in the bankruptcy or its related adversary proceedings, or had submitted to the jurisdiction of the Court.

The Settlement Order, which was not appealed and is final, states on its face that Rex submitted to the jurisdiction of the Court, meaning that he waived any objection to the Court's exercise of personal jurisdiction over him and the Settlement Order is therefore binding on him.

Orders of the bankruptcy court are interpreted according to the usual rules of contract construction. *See In re XO Comms., Inc.*, 330 B.R. 394, 432 (Bankr. S.D.N.Y. 2005) (reiterating that "fundamental rules of contract interpretation apply to bankruptcy orders"); *In re Felt Mfg. Co., Inc.*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009) ("The terms of court orders, plan of reorganizations, and stipulations between parties are typically examined under principles of contract interpretation." (Citations omitted.)). The unambiguous terms of an order are given their plain meaning. *In re Endeavor Highrise, L.P.*, 432 B.R. 583, 638 (Bankr. S.D. Texas 2010) ("[W]hen a contract is 'so worded that it can be given certain or definite legal meaning or

5

interpretation,' it is not ambiguous and must be construed according to its plain meaning as a matter of law.") (Internal citation omitted.)). As set forth below, the terms of the Settlement Order plainly prohibit Rex from pursing the claims raised in the Application to Remove without receiving prior leave from this Court, which he has not done.

The Settlement Order clearly imposes a "[p]ermanent injunction prohibiting the instigation of or continuation of any litigation by the Parties against any other Party." In the Settlement Order, this Court unequivocally ordered all parties:

> [t]o refrain from bringing or continuing any litigation without first making application to this court for authority to bring or continue any suit, and obtain[] an order of this court authorizing the filing or continuation of any such suit on subjects pertaining to the subject matter of this litigation *viz* any suit pertaining to the administration or distribution of the estate of Lee Roy Hoskins, Sr., deceased, or the acts of failure to act concerning the administration or distributions under the Residual Trust or the Marital Deduction Trust or any other trust provided for under the terms of the probated will of Lee Roy Hoskins, Sr., deceased ...

- - Dkt. No. 78, Case No. 01-23337, p.2.

Rex submitted to the jurisdiction of this Court for the purposes of entry of the Settlement Order, which is a final order and he cannot now avoid the permanent injunction.

Rex did not seek authorization from this Court before filing his Application to Remove, which pertains to the administration or distribution of the estate of Lee Roy Hoskins, Sr., deceased. Thus, the Application to Remove clearly runs afoul of the permanent injunction contained in the Settlement Order.

In his response to the Motion to Enforce, Rex requested relief from the injunction. The injunction was issued in order to prevent further litigation of the settled matters and to allow this Court to serve as a gate keeper for any future litigation of related, but new causes of action. To the extent that the Live Oak County litigation seeks to relitigate settled issues, such actions are

6

inappropriate because they were enjoined and should therefore be dismissed. To the extent that Rex complains of matters which occurred post settlement and either violate the settlement or Texas Probate Law, Rex is entitled to have those matters decided by a court. Three separate forums are appropriate: 1) this Court 2) arbitration pursuant to the Settlement Agreement or 3) Live Oak County Court.

Previously, in a somewhat similar suit brought by Rex's father, this Court enforced the injunction and ordered the parties to mediation and binding arbitration. The arbitrator appointed a receiver. The receiver then filed suit in Live Oak County. With a related action already pending in State Court, this Court finds it appropriate to have all issues decided in one place and therefore will allow the continuation of Rex's action in Live Oak County. In doing so, the Court expresses no opinion regarding the propriety of Rex's cause of action other than granting him permission to proceed despite the injunction. The injunction shall continue for all other purposes and the parties to continue to be bound by the terms of the Settlement Agreement, the Settlement Order, and the Mutual Release.

The State Court is empowered to interpret the partys' agreements and releases, including without limitation, the arbitration requirements.

It is so **ORDERED**.

Signed this 17th day of December, 2013.

---
RICHARD S. SCHMIDT
United States Bankruptcy Judge

7